1
2
3
4
5
6
7
8

## IN THE UNITED STATES DISTRICT COURT FOR THE

## EASTERN DISTRICT OF CALIFORNIA

9
10

JAMES GRIPENSTRAW, as an
individual, on behalf of himself and on
behalf of all persons similarly situated,

11
12

Plaintiff,

13

v.

14
15

BLAZIN' WINGS, INC. d/b/a BLAZIN'
WINGS, a Minnesota Corporation; and
Does 1 through 50,

16
17

Defendants.

18

_____/

1:12-cv-00233-AWI-SMS

**ORDER GRANTING
PRELIMINARY APPROVAL OF
CLASS SETTLEMENT**

(Doc. 22)

19

## I. INTRODUCTION

20        This class action arises out of Defendant's alleged violation of the California Labor Code

21  by failing to accurately pay the Plaintiff and other class members the correct overtime pay for

22  shifts in excess of twelve (12) hours, as calculated by Section 510, et. seq., denying Plaintiff and

23  other class members required rest and meal breaks, omitting non-discretionary bonus

24  compensation from calculation of overtime pay, and correspondingly misrepresenting wages in

25  mandatory wage statements, issued pursuant to Section 226. *First Amended Complaint* (*"FAC"*)

26  ¶¶ 6-10.  Defendant denies any wrongdoing. Settlement Agreement § II(E). Plaintiff asserts that

27  since conducting initial investigations the parties have participated in Mediation and wherein

28  they negotiated an arms-length settlement. Plaintiff's Motion for Preliminary Approval of Class

1

1   Settlement ("Doc. 21-1") at p. 2; Declaration of Norman Blumenthal ("Doc. 22-2") at ¶ 4.

2   Pending before the Court is Plaintiffs' motion for preliminary approval of the parties' class

3   settlement stipulation and notice to class members. This motion necessarily requires the court to

4   conditionally certify the class for purposes of the settlement agreement. For the following

5   reasons, Plaintiff's motion for preliminary approval of class settlement is granted.

6

7                                    **II. BACKGROUND**

8   **A. Procedural Background**

9          On October 11, 2011, Plaintiff filed a Complaint in the Superior Court of the State of

10   California, County of Fresno. The Complaint alleged a class action that asserted the following

11   claims for relief: (1) Unfair Competition; (2) Failure to Pay Overtime Wages; (3) Failure to

12   Provide Wages When Due; and (4) Failure to Provide Accurate Itemized Statements.

13          On November 28, 2011, Defendant, Blazin' Wings filed with the Superior Court its

14   General Denial and Affirmative Defenses.

15          On February 17, 2012, Defendant filed a Notice of Removal with this Court pursuant to

16   28 U.S.C. § 1441(a). Defendant cited diversity of citizenship pursuant to 28 U.S.C. § 1332(a) as

17   the basis for original jurisdiction with this Court. Doc. 1 at p. 1.

18          On May 31, 2012, Plaintiff, by stipulation of the parties and with approval of the Court,

19   filed a First Amended Complaint. The *FAC* added an additional claim for relief: (5) Violation of

20   the Private Attorney General Act.

21          On July 9, 2013, Plaintiff filed a motion for preliminary approval of class settlement

22   requiring conditional certification of a class for settlement purposes pursuant to Rule 23(b)(3)

23   based on a predominant common question of law or fact. Doc. 22-1 at p. 18. On August 28,

24   2013, Defendant filed a statement of non-opposition. Doc. 27.

25   **B. Factual Background**

26          Defendant Blazin' Wings, Inc. ("Defendant") is a subsidiary of Buffalo Wild Wings, Inc.,

27   which operates and maintains Buffalo Wild Wings restaurants. Plaintiff, James Gripenstraw

28

1  ("Plaintiff"), and the other proposed class members were "non-exempt" employees of Defendant

2  between October 11, 2007 and March 31, 2013.

3       Plaintiff alleges that between October 11, 2007 and March 31, 2013, he was frequently

4  required by Defendant to work at least twelve (12) hours in a workday. *FAC* at ¶ 5. Plaintiff

5  alleges that during these long shifts Defendant required Plaintiff to work throughout, usually

6  without rest or meal breaks. *FAC* at ¶ 6. Defendant is alleged to have altered employee time

7  records by recording fictitious thirty (30) minute meal breaks to conceal its policy of denying

8  breaks. *FAC* at ¶ 8. Plaintiff alleges that for the work in excess of twelve (12) hours Defendant

9  calculated the overtime wage at one and one-half time the regular rate of pay rather than two

10  times regular pay as required by California Labor Code § 510(a). *FAC* at ¶ 7.

11       Plaintiff further alleges that Defendant's non-discretionary bonus program categorically

12  fails to be accounted for purposes of calculating overtime pay. *FAC* at ¶ 9. Accordingly, Plaintiff

13  contends, Defendant's failures result in systematic underpayment of overtime compensation.

14  *FAC* at ¶ 9. Based on the aforementioned failures and underpayments, Plaintiff alleges that the

15  mandatory wage statements issued by Defendant are inaccurate. *FAC* at ¶10. Plaintiff alleges that

16  all of the aforementioned work conditions and wage deficiencies were and are common to the

17  other proposed class members. *FAC* at ¶¶ 6-10.

18  **C. Proposed Settlement**

19       The parties seek to certify a class, for purposes of this settlement agreement, consisting

20  of "[a]ny individual who was included in either or both of the following categories between the

21  date of October 11, 2007 through March 31, 2013: [¶] (i) Group A Class Members: All persons

22  who were employed by Defendant as non-exempt employees in California at any time between

23  October 11, 2007 and March 31, 2013, regardless of whether they have been separated or are still

24  employed as of March 31, 2013; [¶] (ii) Group B Class Members: All persons who were

25  employed by Defendant as non-exempt employees in California between October 11, 2007 and

26  March 31, 2013, regardless of whether they have been separated or are still employed as of

27  March 31, 2013, and who were underpaid double-time earning during this period." Doc. 22-1 at

28  p. 1; Settlement Agreement at §§ I and III(A).

The parties have agreed to a maximum gross settlement amount of "four hundred thousand U.S. dollars and no cents ($400,000.00) (the "Gross Fund Value") to be paid as compensation for all damages in consideration of the settlement and dismissal with prejudice of the [l]itigation and the discharge of the [r]eleased [c]laims of the members of the [c]lass." Settlement Agreement at §§ I, III(F); Doc. 22-2 at ¶ 5. Defendant is to wire the gross settlement amount to the proposed claims administrator within 20 days of the date of this order. Settlement Agreement at § III(M)(b).

The settlement agreement further provides that the Gross Fund Value shall be used to satisfy the following: (i) Gross Settlement Amounts payable to Settlement class members, made on a claims-made basis; (ii) Class Representative Service Award in an amount not to exceed $7; (iii) Cost Award in an amount not to exceed $15,000; (iv) Fees Award in an amount not to exceed 25% ($100,000) of the Gross Fund Value; (v) PAGA Payment, in an amount not to exceed $15,000; (vi) Defendant's share of applicable payroll taxes; and (vii) Settlement Administration Expenses estimated not to exceed $30,000. Settlement Agreement at § III(J)(e); Doc. 22-2 at ¶ 5. A portion of the fund will first be set aside for Group B class members who were actually underpaid for the doubletime rate. That figure will be capped at $31,392.00 and distributed on a pro-rata basis. The unclaimed remainder of that allocation along with the remainder of the net fund balance will be distributed between the Group A class members on a pro-rata basis. Any funds remaining after distribution to the settlement class will be distributed cy pres as an additional PAGA payment to the Labor and Workforce Development Agency. Settlement Agreement at § III(J)(e).

The settlement amount to be paid by Defendant is in consideration of the release by Plaintiff and other class members from a comprehensive list of related claims, as defined by the terms of the settlement agreement. Settlement Agreement at § III(F)(d).

The settlement agreement specifies that "[w]ithin sixty calendar [(60)] days of this court's Order Granting Preliminary Approval the Claims Administrator will send a copy of the notice, claim for, and exclusion request to all class members." Settlement Agreement at § III(J)(d). Thirty (30) days after mailing of the initial notice the claims administrator is to send a

1  reminder postcard to all identified class members who have not yet responded. *Id.* The deadline

2  for returning claim forms is proposed to be sixty (60) days from the initial notice of mailing by

3  the claims administrator. *Id.*

4  Procedures are in place in the settlement agreement for class members to opt-out of or

5  object to the settlement. Settlement Agreement at §§ III(F)(f), III(J)(f).

6

7  ### III. DISCUSSION

8  **A. Class Certification Prerequisites**

9  Before the court may evaluate a class action settlement under Rule 23(e) of the Federal

10  Rules of Civil Procedure, the settlement class must meet the requirements of Rules 23(a) and (b),

11  just as in the case of a litigated class. Federal courts must pay "undiluted, even heightened,

12  attention" to class certification requirements in a settlement context. *Amchem Products, Inc. v.*

13  *Windsor*, 521 U.S. 591, 620 (1997); *Molski v. Gleich*, 318 F.3d 937, 946 (9th Cir. 2003).

14  Rule 23(a) of the Federal Rule of Civil Procedure lists four criteria that must be met to

15  certify a class action: (1) Numerosity; (2) Commonality of law or fact; (4) Typicality of the

16  representative plaintiff's claims; and (4) Adequacy of representation. A class may only be

17  certified if the court is "satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a)

18  have been satisfied." *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 161 (1982). The

19  burden is on the party seeking class certification to show that these elements have been met.

20  *Doninger v. Pac. N.W. Bell, Inc.*, 564 F.2d 1304, 1308 (9th Cir. 1977).

21  *1. Numerosity*

22  The class must be so numerous that joinder of all members individually is

23  "impracticable." Fed.R.Civ.P. 23(a)(1). Rule 23's requirement that "the class be so numerous

24  that joinder of all members is impractical does not mean that joinder must be impossible, but

25  rather means only that the court must find that the difficulty or inconvenience of joining all

26  members of the class makes class litigation desirable." *In re Itel Sec. Litig.*, 89 F.R.D. 104, 112

27  (N.D. Cal. 1981); *accord Baghdasarian v. Amazon.com, Inc.*, 258 F.R.D. 383, 388 (C.D. Cal.

28  2009) (defining "impracticability" as when joinder of all class members is "difficult or

inconvenient*"*); *Campbell v. PricewaterhouseCoopers, LLP*, 253 F.R.D. 586, 594 (E.D. Cal. 2008) (holding that "an attempt to join all parties must only be difficult or inconvenient" to satisfy Rule 23(a)(1)) (citing *Harris v. Palm Springs Alpine Estates, Inc*., 329 F.2d 909, 913-914 (9th Cir. 1964)).

No specific numerical threshold is required. *General Tel. Co. v. E.E.O.C.*, 446 U.S. 318, 330 (1980). Instead, it "requires examination of the specific facts of each case and imposes no absolute limitations*." General Tel. Co*. *v. E.E.O.C.*, 446 U.S. at p. 330. Generally, forty or more members will satisfy the numerosity requirement. *Collins v. Cargill Mean Solutions Corp*., 274 F.R.D. 294, 300 (E.D. Cal. 2011); *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2nd Cir. 1995).

Here, Plaintiff claims that the proposed class would be composed of over 3,000 members. Doc. 22-2 at ¶ 31(a); Doc. 22-1 at p. 19. Although Plaintiff does not explain how he arrives at this figure, it is undisputed by the Defendant for purposes of this settlement agreement. Accordingly, the numerosity requirement of Rule 23(a)(1) is met.

*2.Commonality*

A class has sufficient commonality "if there are questions of fact and law which are common to the class." Fed.R.Civ.P. 23(a)(2). All questions of fact and law need not be common to satisfy the rule. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). However, "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury….'" *Wal-Mart Stores, Inc. v. Dukes*, ___ U.S. ____,____, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011) (citing *Falcon*, 457 U.S. at p. 157). "This does not mean merely that they have all suffered a violation of the same provision of law," rather, "[t]heir claims must depend upon a common contention" the determination of the truth or falsity of which "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart,* 131 S. Ct. at p. 2551. Rather than focus on the traditional inquiry of identifying common questions, the *Wal-Mart* Court focused on "the capacity of [the] classwide proceeding to generate common answers." *Id.*

The *Wal–Mart* plaintiffs alleged local managers discriminated against women when exercising discretion over pay and promotion decisions. *Wal-Mart*, 131 S. Ct at p. 2548. This discretion, according to plaintiffs, was exercised disproportionately in favor of male employees, leading to an unlawful disparate impact on the female employees. *Id.* The Court's focus in finding inadequate class commonality was on the fact that the alleged discrimination was not an overarching policy of discrimination attributable to Wal-Mart. Rather, the discrimination alleged was a result of exercise of individual managerial discretion. *Id.* Accordingly, the Court found that the purported common questions were not able to produce the common answers necessary to satisfy the commonality inquiry. *Id.*

Many California Courts and United States District Courts have found that claims based on a uniform policy can satisfy the commonality requirement of Rule 23(a). *See, e.g., Brinker Rest. Corp. v. Superior Court*, 53 Cal.4th at pp. 1020, 1033 (2012) (finding, despite fact that "Brinker submitted hundreds of declarations in support of its opposition to class certification," that "[c]laims alleging that a uniform policy consistently applied to a group of employees in violation of the wage and hour laws are of the sort routinely, and properly, found suitable for class treatment."); *Vedachalam v. Tata Consultancy Servs., Ltd.,* No. 06–0963, 2012 WL 1110004, at *12–*13, (N.D. Cal. April 2, 2012) (rejecting defendants' argument that "this policy was not always uniformly applied," citing *Kurihara* v. Best Buy Co., No. 06-1884, 2007 WL 2501698 (N.D. Cal 2007); *In re Taco Bell Wage & Hour Actions,* No. 07–1314, 2012 WL 5932833, at *6 (E.D. Cal. 2012) (where defendants admitted that there was a uniform policy but argued that "as a matter of practice, the policy is carried out in a variety of ways," the court relied on *Brinker* and found that it was sufficient that there was "a corporate policy that was equally applicable to all employees").

For purposes of this settlement both parties are in agreement that sufficient commonality exists to satisfy Rule 23(a)(2). Doc. 22-1 at p. 20. Regardless, this Court is required to give "undiluted, even heightened attention" to the class certification requirements in a settlement context. *Amchem Products, Inc.,* 521 U.S. at p. 620

Plaintiff's First Cause of Action alleges that Defendant engaged in unfair business practice in violation of California Business and Professions Code section 17200. Plaintiffs Second Cause of Action alleges that Defendant failed to pay overtime compensation in violation of California Labor Code sections 204, 510, 1194 and 1198. Both causes of action are based on the underlying factual claim that it was Defendant's uniform policy and practice not to pay the members of the California Class the appropriate overtime rate and that as a result Defendant withheld wages due. *FAC* at ¶¶ 7, 15, 16, 52, 62. The determination of truth or falsity of these allegations has the potential to generate a common answer that would resolve the claims. It is easily determined at what rate Defendant paid Plaintiff and other class members for overtime hours and whether that rate is in violation of the California Labor Code.

The First Cause of Action also rest partially on Plaintiff assertion that Defendant has a companywide meal break policy whereby Plaintiff and other class members are often required to skip their breaks without compensation in violation of California Labor Law. *FAC* at ¶¶ 6, 8, 17, 55. Although the frequency whereby class members were required to skip meal breaks may differ, the common contention that the policy requiring the skipping of meal breaks without compensation violates the California Labor Code is likely to generate a common answer. *See In Re Autozone, Inc., Wage and Hour Employment Practices Litigation*, 289 F.R.D. 526 (N.D. Cal. 2012) (where plaintiffs alleged a violation of the California Labor Code based on defendants rest break policy there was sufficient commonality to satisfy Rule 23(a)(2).)

Plaintiff's Third Cause of Action for failure to pay wages when due is based on the same underlying factual basis and can be decided, at least in large part, through determination of the common questions.

Plaintiff's Fourth Cause of Action for failure to provide accurate itemized statement in violation of California Labor Code section 226. Again, whether the pay stubs were accurate requires the answering of the common questions presented by the First and Second Causes of action. Whether Defendant's issuance of inaccurate paystubs, which showed an incorrect total amount of overtime pay and rate of overtime pay, violated California Labor Code sections 226, is a question that would likely generate a common answer. *FAC* at ¶ 10.

Plaintiff's Fifth Cause of Action for violation of the Private Attorneys General Act is based on the same factually underpinning as the First, Second and Fourth Causes of action and can be resolved, in large part, with determination of the common questions discussed above.

Plaintiff has identified at least three common questions that could result in common answers, each of which could resolve a claim in one stroke. For purposes of the pending settlement agreement, Plaintiff has satisfied the commonality requirement of Rule 23(a)(2).

*3. Typicality*

The requirement of typicality is met if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). Typicality requires that a class representative "possess the same interest and suffer the same injury" as the putative class. *Falcon,* 457 U.S. at p. 156. Representative claims need only be "reasonably co-extensive with those of absent class members; they need not be substantially identical." *See Hanlon,* 150 F.3d at p. 1020. For example, in *In re AutoZone, Inc.,* 289 F.R.D. at 530, one of several proposed classes would have included employees who were reimbursed mileage for use of their personal vehicles for work-related duties at the rate of thirty cents per mile. *Id.* at 547. Because the proposed representative plaintiff was never reimbursed at that rate, the typicality requirement was not satisfied and therefore that class could not be certified. *Id.* at 530.

Here, although potentially different in extent and frequency, Plaintiff claims to have personally suffered all of the injuries giving rise to the claims for potential class members, namely, overtime wage miscalculation, break denial, and inaccurate reporting of payment information. Plaintiff's claims are reasonably coextensive those of the absent potential class members, thus, the typicality requirement of Rule 23(a)(3) is met.

*4. Adequacy*

The requirement of adequate representation asks whether the representative "will fairly and adequately protect the interests of the class." *See* Fed.R.Civ.P. 23(a)(4). Courts are to inquire (1) whether the named plaintiffs and counsel have any conflicts of interest with the rest of the potential class members and (2) whether the named plaintiff and counsel will prosecute the action vigorously for the class as a whole. *See Hanlon,* 150 F.3d at p. 1020.

9

There is no indication that either Plaintiffs or their counsel have a conflict of interest. According to counsel for the Plaintiff, Plaintiff has, thus far, actively participated in discovery and investigation and has effectively communicated with counsel. Doc. 22-2 at ¶ 31(d). Plaintiff's counsel reports that he and his firm have "extensive experience in employment class action." Doc. 22-2 at ¶ 31(d). To support his claim Mr. Blumenthal submits his firm's resume reflecting that his firm has been involved as class counsel in over two hundred class action matters. Doc. 22-2 at ¶ 32; Doc. 22-2 at p. 84. For purposes of this settlement agreement, this Court is satisfied with the adequacy of Plaintiff as a class representative and with counsel's experience and prosecution of the matter thus far. The adequacy requirement of Rule 23(a)(4) is therefore met.

*5. Conclusion*

Since the requirements of numerosity, commonality, typicality, and adequacy have been met, the court will conditionally certify the class. Based on the parties stipulation and the foregoing discussion this Court conditionally certifies this class for settlement purposes as:

> Any individual who was included in either or both of the following categories between the date of October 11, 2007 through March 31, 2013:
> (i)    Group A Class Members: All persons who were employed by Defendant as non-exempt employees in California at any time between October 11, 2007 and March 31, 2013, regardless of whether they have been separated or are still employed as of March 31, 2013;
> (ii)   Group B Class Members: All persons who were employed by Defendant as non-exempt employees in California between October 11, 2007 and March 31, 2013, regardless of whether they have been separated or are still employed as of March 31, 2013, and who were underpaid double-time earning during this period.

**B. Type of Class Action – Rule 23(b)(3) Class**

Having met the prerequisites of Rule 23(a) for class certification, Plaintiffs are entitled to proceed as a class if the class meets the requirements of one of the subsections found in Rule 23(b).  Plaintiffs have moved for certification of the Class under Rule 23(b)(3). Doc. 22-1 at p. 27. Rule 23(b)(3) provides that a class action may be maintained if:

> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the

controversy. The matters pertinent to these findings include: [¶] (A) the class members' interest in individually controlling the prosecution or defense of separate actions; [¶] (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; [¶] (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and [¶] (D) the likely difficulties in managing a class action.

*1. Common Question Predominates*

Common questions of law and fact predominate over individual questions, satisfying the first component of the Rule 23(b)(3) inquiry, where "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, ... predominate over those issues that are subject only to individualized proof." *Ortega v. J.B. Hunt Transport, Inc*., 258 F.R.D. 361, 366 (C.D. Cal. 2009) (citing *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*. (*In re VisaCheck/MasterMoney Antitrust Litig.*), 280 F.3d 124, 136 (2nd Cir. 2001)). In evaluating predominance, the Court looks to whether the focus of the proposed class action will be on the words and conduct of the defendants rather than on the behavior of the individual class members. *Id.* "[C]ourts' discomfort with individualized liability issues is assuaged in large part where the plaintiff points to a specific company-wide policy or practice that allegedly gives rise to consistent liability." *Kurihara,* 2007 WL 2501698 at *10. Where there exist "broad employer policies [which] can impact many workers at once … a need for class treatment" is often present. *Sepulveda v. Wal-Mart Stores, Inc.,* 237 F.R.D. 229, 247 (C.D. Cal. 2006).

"Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020 (9th Cir. 2011) (citing *Erica P. John Fund, Inc., v. Halliburton Co*., ___U.S. ___,___, 131 S.Ct. 2179, 2184, 180 L. Ed. 2d 24 (2011). This court has already addressed the individual causes of action in Section III(A)(2), *Infra*. Since the predominance factor of Rule 23(b)(3) requires absence of individual inquires, a more stringent standard than even the heightened commonality requirement of *Wal-Mart*, the Court continues the analysis.

Plaintiff's First and Second Causes of Action for unlawful business practices in denial of required breaks and failure to pay overtime compensation, (the underlying factual bases for the action) respectively, could be substantially resolved with the determination of whether Defendant

1   had in place a policy of denying meal breaks and inaccurately calculating overtime pay. Both

2   determinations can be made with reference only to Defendant's practices and policies. Since

3   Plaintiff alleges a uniform, company-wide practice by Defendant giving rise to liability, little

4   individualized inquiry into specific class member experience is necessary.

5          The only individualized inquiries required would be answered by the initial determination

6   of eligibility for potential class members (i.e. was the individual a non-exempt employee of

7   Defendant between October 2007 and March 2013) and a determination of the number of hours

8   worked for purposes of damage calculations.

9          This Court expects wide divergence on the question of damage calculations for proposed

10  class members. However, "damage calculations alone cannot defeat certification …. [t]he

11  amount of damages is invariably an individual question and does not defeat class action

12  treatment." *Yokoyama v. Midland Nat. Life Ins. Co*., 594 F.3d 1087, 1094 (9th Cir. 2010)

13  "[D]amages determinations are individual in nearly all wage-and-hour class actions." *Leyva v.*

14  *Medline Indus. Inc.*, 716 F.3d 510, 513-14 (9th Cir. 2013); *See, e.g. Brinker,* 53 Cal.4th at p.

15  1039 ("In almost every class action, factual determinations of damages to individual class

16  members must be made. Still we know of no case where this has prevented a court from aiding

17  the class to obtain its just restitution. Indeed, to decertify a class on the issue of damages or

18  restitution may well be effectively to sound the death-knell of the class action device.") (internal

19  citation and quotation marks omitted); *Jimenez v. Domino's Pizza, Inc.*, 238 F.R.D. 241, 250

20  (C.D. Cal. 2006) (certification inappropriate where "the variability goes to whether an individual

21  class member has any claim at all" rather than "individual damage determinations based on the

22  number of hours worked").

23         Based on the foregoing, this Court is satisfied that the common questions predominate for

24  purposes of Rule 23(b)(3) inquiry.

25  *2. Class Action is Superior Method of Adjudication*

26         Rule 23(b)(3) also requires that a class action be "superior to other available methods for

27  fairly and efficiently adjudicating" this controversy. Generally, a class action is superior to other

28  methods of adjudication where litigation of common issues reduce litigation costs, promote

greater efficiency, and where no realistic alternative to class action exists. *Valentino v. Carter-Wallace, Inc.* 97 F.3d 1227, 1234-1235 (9th Cir. 1996); *Zinser v. Accufix Research Institute, Inc.* 253 F.3d 1180, 1190 , *opinion amended on denial of reh'g,* 273 F.3d 1266 (9th Cir. 2001).  In determining whether a class action is superior, courts should consider the four factors under Rule 23(b)(3). *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 652 (Cal C.D. 1996); *Sweet v. Pfizer* 232 F.R.D. 360, 374 (C.D. Cal 2005*); Zinser v. Accufix*, 253 F.3d at p. 1190.

*a. FRCP 23(b)(3)(A)*

The first factor to consider is the interest of each member in "individually controlling prosecution or defense of separate actions." Fed.R.Civ.P. 23(b)(3)(A). Where damages suffered by each putative class member are not large this factor weighs in favor of certifying a class action. *Zinser v. Accufix,* 253 F.3d at p. 1190; *see, e.g., In re Northern Dist. Of California, Dalkon Shield,* 693 F.2d 847, 856 (9th Cir. 1982). Further, where the class members would have an emotional stake in the litigation this factor weighs against certification of a class. *Barbosa v. Cargill Meat Solutions Corp.*, No. 11-0275, 2013 WL 3340939 at *10 (E.D. Cal. 2013).

Here, it is difficult to ascertain the exact potential recovery amount for each of the class members due to the absence of proof of damages as to the class members and variance based on the duration of their employments. However, courts in this district in very similar wage dispute cases have found that the amount in dispute is likely to be relatively modest such that it weighs in favor of class certification. *See, e.g. In re Taco Bell, 2011 WL 4478730 at *9.* Further, this Court notes Plaintiff's recognition that the total actual class damages could not exceed $1.6 million. Doc. 22-2 at ¶ 26. If all of the three thousand potential class members sought recovery from the potential gross damage amount their mean individual damages would be approximately $500.00. This figure qualifies as "not large" for purposes of Rule 23(b)(3)(A).

Additionally, there is no indication that any of the potential class members have sought to bring suit against Defendant based on the underlying factual claims alleged in Plaintiff's complaint, tending to indicate that none of the potential class members has had enough of an interest in controlling the legislation or an emotional stake sufficient to file suit. If potential class members should decide that they want control of the action, they have the option to opt-out of

the class pursuant to the settlement agreement. *See Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 451 (E.D. Cal. 2013); Settlement Agreement § 3(F)(f).

Based on the foregoing, this factor weighs in favor of certification.

*b. FRCP 23(b)(3)(B)*

The second factor of interest to the court is the extent and nature of any litigation concerning the controversy already begun by or against class members. Fed.R.Civ.P. 23(b)(3)(B). This Court is unaware of any other pending litigation between Defendant and any of the potential class members. Accordingly, this factor weighs in favor of certification.

*c. FRCP 23(b)(3)(C)*

The third factor for consideration is the desirability or undesirability of concentrating the litigation of the claims in the particular forum. Fed.R.Civ.P. 23(b)(3)(C). "When the parties have agreed on a proposed Settlement Agreement, 'the desirability of concentrating the litigation in one forum is obvious.' Here, the parties in this case have agreed on a proposed settlement agreement, and for the purpose of approving a settlement, 'this forum is as good [as] or better than any other.'" *Monterrubio v. Best Buy,* 291 F.R.D. at p. 452 (internal citations omitted). Accordingly, to the extent that this factor is relevant in the context of a proposed settlement, the Court finds that it is desirable to concentrate the litigation of the claims in this particular forum.

*d. FRCP 23(b)(3)(D)*

The fourth and final consideration for the determination of superiority of the class action as a vehicle for litigation is the likely difficulties in managing a class action. Fed.R.Civ.P. 23(b)(3)(D).  In the context of a settlement, however, considerations regarding management of the class action are irrelevant because the proposal to the court is to avoid trial through a settlement agreement. *See Amchem,* 521 U.S. at p. 620. Moreover, the parties have agreed to a comprehensive procedure for calculation and settlement of claims by use of a claims administrator. This process appears to be adequate to manage the damage calculations of the class members. For purposes of the settlement agreement, this factor weighs in favor of certification.

**C.  Preliminary Approval of Settlement**

In their motion, the parties request that the court preliminarily approve their settlement. Rule 23(e) provides, in relevant part:

> (e)      Settlement, Voluntary Dismissal, or Compromise. The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:
>
>   (1)      The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.
>   (2)      If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.
>   (3)      The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.

*1. Preliminary Finding of Fairness*

Federal Rule of Civil Procedure 23(e)(2) requires that any settlement in a class action be approved by the court which must find that the settlement is fair, reasonable, and adequate. The role of the district court in evaluating the fairness of the settlement is not to assess the individual components, but to assess the settlement as a whole. *Lane v. Facebook, Inc.,* 696 F.3d 811, 818–19 (9th Cir. 2012) *reh'g denied* 709 F.3d 791 (9th Cir. 2013). The class representatives have an incentive to advance their own interests over that of the class. *Staton v. Boeing Co.,* 327 F.3d 938, 959–60 (9th Cir. 2003). Class counsel owes the ultimate fiduciary responsibility to the class as a whole and is not bound by the views of the named plaintiffs regarding settlement. *Id.* Therefore, in assessing the fairness of the settlement, the court is to ensure that "the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1027 (9th Cir. 1998) (quoting *Officers for Justice v. Civil Serv. Comm'n of San Francisco,* 688 F.2d 615, 625 (9th Cir. 1982)). Where a settlement approval is requested prior to formal class certification and appointment of a class representative a higher

1    standard of fairness and more probing inquiry are required to ensure that there is no collusion

2    between class counsel and the defendant. *Hanlon*, 150 F.3d at p. 1026.

3         The court considers a number of factors in making the fairness determination including:

4    "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further

5    litigation; the risk of maintaining class action status throughout the trial; the amount offered in

6    settlement; the extent of discovery completed and the stage of the proceedings; the experience

7    and views of counsel; the presence of a governmental participant;[2] and the reaction of the class

8    members to the proposed settlement." *Lane,* 696 F.3d at 819 (quoting *Hanlon,* 150 F.3d at 1026).

9    Further, a court should consider whether settlement is "the product of collusion among the

10   negotiating parties." *Morales v. Stevco, Inc.*, No. 09-0704, 2011 WL 5511767 (E.D. Cal. 2011)

11   (citing *In re Mego Financial Corp. Securities Litigation,* 213 F.3d 454, 458 (9th Cir. 2000)).

12   *a. The Strength of Plaintiff's Case*

13        In this action, Plaintiff asserts that Defendant failed to pay class members overtime pay,

14   denied class members rest and meal breaks without compensation, omitted non-discretionary

15   bonus compensation from calculation of overtime pay, and correspondingly misrepresented

16   wages in mandatory wage statements. Defendant contends that "it has complied at all times with

17   the California Labor Code, the California Code of Regulations, including applicable Wage

18   Order, [and the] California Business and Profession Code[.]" Doc. 22-2 at ¶ 8. Defendant further

19   contends that "it paid the Plaintiff and Class Members all wages and other payments owing to

20   them under applicable law." *Id.*

21        Plaintiff recognizes for purpose of settlement that Defendant's position is supported by

22   the recent California Supreme Court holding in *Brinker Restaurant Corp. v. Superior Court*, 53

23   Cal.4th 1004, wherein the Court held that an employer need not ensure that employees do not

24   work on off-duty meal periods and denied predominance of common questions where employees

25   claimed a de-facto meal break denial policy similar to the case at hand. If Defendant were

26   successful in a defense as to its meal break policy Plaintiff's recovery and class certification

27   might fall into question.

28

1    As to Plaintiff's overtime miscalculation claims, the recovery, if liability is found, would
2    be relatively small.

3    Liability, recovery amount, and class certification are all to be heavily contested issues if
4    a settlement agreement is not accepted. Accordingly, this factor weighs in favor of preliminary
5    approval of the class settlement.

6    *b. The Risk, Expense, Complexity, and Likely Duration of Further Litigation*

7    Both parties are exposed to both risk and expense from further litigation. This case would
8    require proof of Defendant's practice, rather than a written policy. Such cases require
9    examination of numerous witnesses, by both parties, either through depositions or trial
10   testimony, often both. Settlement at this phase of the litigation eliminates the need for such
11   expenses.

12   As discussed above, multiple issues would likely be hotly contested and would give rise
13   to additional motions work and possibly a lengthy trial. The settlement of this action results in a
14   benefit to the class members without the additional costs and risks associated with proceeding to
15   a trial on the class members' claims. Given the risk of the class not receiving any recovery or
16   receiving delayed recovery, substantially reduced in value by extensive costs and protracted
17   litigation expenses, this factor weighs in favor of preliminary approval of the class settlement.

18   *c. The Risk of Maintaining Class Action Status Throughout the Trial*

19   Although this court has conditionally certified a class for purposes of settlement, there is
20   a foreseeable risk that as discovery progresses the commonality, predominance and suitability
21   factors of Rule 23(a) and (b)(3) would place the class certification in question. If, for instance,
22   the inquiry into Defendant's alleged meal denial policy leads to a highly individualized inquiry,
23   which varies from class member to class member, then the class may not meet the heightened
24   requirements set by the court in *Wal-Mart*.

25   This factor weighs in favor of preliminary approval of the class settlement.

26   *d. The Amount Offered in Settlement*

27   "An important consideration in judging the reasonableness of a settlement is the strength
28   of the plaintiffs' case on the merits balanced against the amount offered in the settlement." *Nat'l*

17

1   *Rural Telecom. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 528 (C.D.Cal.2004) This Court has

2   already performed a surface level evaluation of the strengths of Plaintiff's case.

3         In determining whether the amount offered in settlement is fair, the Ninth Circuit has

4   suggested that the Court compare the settlement amount to the parties' "estimates of the

5   maximum amount of damages recoverable in a successful litigation." *See In re Mego Financial*

6   *Corp. Securities Litigation,* 213 F.3d at 459. "[A] cash settlement amounting to only a fraction of

7   the potential recovery does not per se render the settlement inadequate or unfair," however. *Id.*

8         The parties have agreed to a settlement on an individual claim basis with a gross

9   settlement amount not to exceed $400,000.00. According to Plaintiff's counsel, the initial

10  valuation was approximately $1.6 million in actual damages. Doc. 22-2 at ¶ 26. The majority of

11  this figure was composed of lost wages attributable to meal break denials. *Id.* Plaintiff has

12  recognized, for purposes of settlement, that the existence of a general policy of meal denial is

13  doubtful. If such a policy does exist proof of it will be costly to obtain and depending on the

14  character of the proof there may be no basis for liability based on *Brinker.*

15        If the settlement agreement is approved as written the net value of the fund, from which

16  potential class members will seek recovery, will be substantially lower than the $400,000 gross

17  value. The net value would be diminished by subtraction of the class representative service

18  award of $7,500.00, cost award of $15,000.00, attorney fees of $100,000.00, PAGA penalty of

19  $15,000.00, settlement administration expenses in the amount of $30,000, and defendants payroll

20  tax share, in an amount dictated by the claims submitted. The net fund value remaining for

21  potential class member claims will fall to approximately $232,500.00. If all three thousand

22  members of the potential class, as represented by Mr. Blumenthal, submit claims, the mean

23  recovery amount would be approximately $77.50. That figure will then be reduced by the

24  amount necessary to pay Defendant's payroll tax share. If class members were able to recover

25  the amount of actual damages, (and attorney fees pursuant to California Labor Code section

26  218.5) as projected by Plaintiff's counsel, the mean recovery would be approximately $533.33.

27  In other words, the average individual recovery if successfully litigated would be approximately

28  seven (7) times greater than the average settlement amount. *See In re Mego Financial Corp.*, 213

F.3d at p. 459 ("the Settlement amount … was roughly one-sixth of the potential recovery, which, given the difficulties in proving the case, is fair and adequate.") With this admittedly rough calculation in mind, the Court recognizes that not all of the class members will likely make a claim. Accordingly, the individual recovery will likely be somewhat higher. *See e.g. Morales v. Stevco, Inc.*, 2013 WL 1222058 at *2 (where only 23% of class members stepped forward to make claims in a similar class wage dispute); *Glass v. UBS Financial Services, Inc.*, No. 06-4068, 2007 WL 221862 at *5 (N.D. Cal. 2007) (where only 51% of the total class members made claims in a similar class wage dispute).

Although Plaintiff and class members may believe that they are entitled to the estimated actual damage "the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *Linney v. Cellular Alaska P'ship,* 151 F.3d 1234, 1242 (9th Cir.1998) (internal citation and quotation omitted). Considering the strength of Plaintiff's case and the maximum estimated possible recovery provided by Plaintiff's counsel, the settlement amount appears reasonable. This factor weighs in favor of preliminary approval of the class settlement.

*e. The Extent of Discovery Completed and the Stage of the Proceedings*

A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair. *Vasquez v. Coast Valley Roofing, Inc.,* 266 F.R.D. 482, 489 (E.D. Cal. 2010); *See City P'ship Co. v. Atlantic Acquisition Ltd. P'ship,* 100 F.3d 1041, 1043 (1st Cir.1996).

Mr. Blumenthal claims to have "conducted a thorough investigation into the facts of the class action …[,] diligently evaluated the Class Members' claims against Defendant[,]" and employed a damage expert to prepare a valuation. *Doc 22-1* at p. 12. Further, Defendant provided Plaintiff's counsel access to extensive and detailed class member data including dates and times of class member work with Defendant. Doc. 22-1 at p. 4. These records presumably took a good deal of time to review. Finally, the parties engaged in a full day of mediation and came to the basic terms of the settlement presently before this Court. Doc. 22-1 at p. 5.

Accordingly, the investigation and discovery conducted in this action weighs in favor of the preliminary approval of the settlement agreement.

*f. The Experience and Views of Counsel*

Counsel for Plaintiff, as discussed in Section III(A)(4) - Adequacy, *Infra*, has extensive experience with employment and wage class action. It is counsel's representation that "[t]his is a fair and reasonable result for the members of the [c]lass." Doc. 22-2 at ¶ 8. Counsel further represents that the agreement come to by the parties was "negotiated at arms-length." Doc. 22-2 at ¶ 4. This factor weighs in favor of the preliminary approval of the settlement agreement.

*g. The Presence of a Government Participant*

There was no government participant in this proceeding thus far. Accordingly, this factor does not presently weigh in the analysis.

*h. The Reaction of the Class Members to the Proposed Settlement*

Plaintiff agrees to the settlement agreement. However, the class members have not yet been given notice of the proposed class settlement. This factor will be assessed at the hearing for final approval of the settlement agreement. This factor does not presently weigh in the analysis.

*i. Attorneys' Fees*

Where the payment of attorney's fees is also part of the negotiated settlement, the fee settlement must be separately evaluated for fairness in the context of the overall settlement. *Vasquez v. Coast Valley Roofing*, 266 F.R.D. at p. 490; *Knisley v. Network Assocs.*, 312 F.3d 1123, 1126 (9th Cir. 2002). "[A] lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Staton,* 327 F.3d at p. 972.  The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark. *Powers v. Eichen,* 229 F.3d 1249, 1256 (9th Cir.2000). For purposes of the proposed settlement agreement, Plaintiff's counsel seeks a fees award in an amount not to exceed 25% ($100,000) of the gross fund value. Since 25% is what is requested and the percentage that is considered benchmark in this Circuit this figure appears fair and reasonable.[1] This factor weighs in favor of the preliminary approval of the settlement agreement.

---

[1] The Court will determine the exact amount of the fee award upon application by counsel for approval of fees.

*j. Named Representative Enhancement.*

In evaluating the enhancement award to a class representative, a court should consider all relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, the amount of time and effort the plaintiff expended in pursuing the litigation. *Staton,* 327 F.3d at p. 977. However, a court should be vigilant for any indicated that the class representative is "more concerned with maximizing [his own] incentives than with judging the adequacy of the settlement as it applies to class members at large." *Rodriguez v. West Publishing Corp.,* 563 F.3d 948, 960 (9th Cir. 2009).

Plaintiff seeks payment in an amount not to exceed $7,500.00 to Mr. Gripenstraw for his service as class representative. The settlement agreement specifies that the class representative service award is not a condition of the agreement and asks the court not consider it when making an assessment of the fairness, reasonableness, adequacy, and good faith of the Settlement. Settlement Agreement § III(M)(d)(iv). The representative service fee cannot be completely divorced from the settlement agreement and is therefore considered in determining its fairness. Plaintiff contends that the requested service payment is a "reasonable additional compensation for the risk, time and effort expended by him in connection with the initiation and maintenance of the Action and in consideration for the general release by such Plaintiff." *Doc 22-2* at ¶ 23.

The court would initially note that Plaintiff's general release is common to all class members and does not provide a basis for additional compensation. Further, Plaintiff does not explain how he was put at risk by his participation in this action since he had already separated from Defendant's employment and counsel appears to have taken this case on a contingency basis; Mr. Gripenstraw would not have been required to pay attorney's fees if the action failed. Moreover, this court is hesitant to approve a representative service award that is approximately one-hundred times greater than the mean recovery of the individual class members. Such an award would certainly tend to indicate that the Plaintiff is more concerned with maximizing his own recovery than with judging the adequacy of the settlement as it applies to class members at large.

1    Despite these concerns, this Court recognizes that Plaintiff likely expended considerable

2  time and effort. Additionally, Plaintiff's request is for an award *not to exceed* $7,500.00.[2] This

3  gives the Court the ability to make an award on the basis of the proof of the effort and time

4  expended by Plaintiff. Accordingly, this court makes the preliminary determination that an award

5  *not to exceed* $7,500.00 appears reasonable and appropriate. This factor weighs in favor of the

6  preliminary approval of the settlement agreement.

7  *k. Conclusion*

8    Based on the foregoing analysis this court makes a preliminary finding of fairness of the

9  settlement agreement.

10 ***2. Notice to Class***

11    For absent class members to be bound by the agreement, class members must adequately

12 represent the absent class members at all times, and the absent class members must be provided

13 with notice, an opportunity to be heard, and a right to opt out of the class. *AT & T Mobility LLC*

14 *v. Concepcion*, ___U.S.___,___, 131 S.Ct. 1740, 1752, 179 L.Ed.2d 742 (2011). Federal Rule of

15 Civil Procedure 23(e)(1) requires that the court "direct notice in a reasonable manner to all class

16 members who would be bound by the proposal." Where, as here, the class has been certified

17 under Rule 23(b)(3), the notice must meet the requirements of Rule 23(c)(2)(B).

18    Rule 23(c)(2)(B) provides, in relevant part that "[t]he notice must clearly and concisely

19 state in plain, easily understood language" the following information:

20       (i) the nature of the action; (ii) the definition of the class certified; (iii) the class
         claims, issues, or defenses; (iv) that a class member may enter an appearance through
21       an attorney if the member so desires; (v) that the court will exclude from the class any
         member who requests exclusion; (vi) the time and manner for requesting exclusion;
22       and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

23 Fed.R.Civ.P. 23(c)(2)(B)

24

25

26 _____

27 [2] Again, the Court will determine the exact amount of the service fee award upon application by counsel for
   approval of fees. A more precise indication of the amount of time that Mr. Gripenstraw committed to assisting in the
   litigation would help the court in its determination of his service award. If there is a large discrepancy between the
28 settlement amount of class members and Plaintiff's proposed service fee this Court will likely order a downward
   adjustment of the service fee.

1    "Adequate notice is critical to court approval of a class action settlement under Rule

2    23(c)(2)(B). Thus, both the content of the notice and the form of the notice must be adequate and

3    approved by the Court." *Monterrubio,* 291 F.R.D. 443, 2013 WL 2106085 at *7 (internal

4    citations omitted).

5        Rule 23(c) (2)(B) requires the court to "direct to class members the best notice that is

6    practicable under the circumstances, including individual notice to all members who can be

7    identified through reasonable effort." However, this does not require actual notice and notice by

8    mail is sufficient if it is reasonably calculated to apprise the interested parties of the pendency of

9    the action and affords them an opportunity to object. *Monterrubio,* 2013 WL 2106085 at *8

10   (citing *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306 (1950)).

11   *a. Content of the Notice*

12       Plaintiffs have submitted the proposed Notice to the Class ("the Notice"), Claim Form,

13   and Opt–Out Form (collectively "Notice Packet"). Upon review of the proposed Notice Packet,

14   the Court finds the content is adequate with the exception of the deadline to file objections. The

15   Notice Packet provides information regarding the background of the action and claims asserted.

16   It provides definitions of the two classes certified. In addition, the Notice explains the terms and

17   provisions of the settlement, including the payments from the gross settlement fund. The Notice

18   explains the rights and procedures to "file a claim form, exclude yourself, object," or not

19   participate and will include the applicable deadlines.[3] Doc. 22–2 at p. 55-63. The Notice further

20   explains the impact of a class member "do[ing] nothing." Doc. 22-2 at p. 55. The parties will be

21   required to give sixty (60) days, rather than the forty-five (45) days agreed to by the parties, from

22   the date notice is given, for the class members to submit any objections. The Notice Packet will

23   provide an estimate of the class member's share based upon the months of employment by

24   Defendants, and explains the effect of the judgment and settlement. Doc. 22-2 at p. 58-59.

25   Further, the Notice Packet will contain the date of the hearing for Final Approval of Class

26   Settlement, Claim and Opt-Out Forms.

27   _____

28   [3] The deadline for opt-outs is set at forty-five (45) days. The Court will require the parties to provide sixty (60) days from the date notice is given to the class members to submit objections.  In order to be timely claim forms must be postmarked within sixty (60) days.

1    This system for providing notice is the best practicable means under the circumstances

2    and is reasonably calculated to provide notice to all class members. Accordingly, the Notice

3    Packet submitted by Plaintiff, with the above mentioned amendment, is adequate to comply with

4    Rule 23(c)(2)(B).

5    **D. Appointment of Class Representative, Class Counsel, and Claims Administrator**

6    For purposes of the settlement agreement presently before this court, the parties stipulate

7    to approval of Mr. Gripenstraw as class representative and appointment of the Law Offices of

8    Blumenthal, Nordrehaug & Bhowmik as class counsel. Settlement Agreement § III(B-C).

9    Having found both counsel and Mr. Gripenstraw adequate in Section III(A)(4) -

10   Adequacy, *Infra*, this court appoints the Law Offices of Blumenthal, Nordrehaug & Bhowmik as

11   class counsel and approves Mr. Gripenstraw as class representative for purposes of this

12   settlement agreement.

13   The parties further agree, for purposes the settlement agreement presently before this

14   court, to retention of Gilardi & Co. as Claims Administrator. The Claims administrator fee is to

15   be capped at $30,000.00. The parties agree that:

16   
17          The Claims Administrator shall be responsible for performing calculations listed in
             [the] Agreement; preparing, printing and mailing the Notice attached hereto as
18          Exhibit A and the Claim Form attached hereto as Exhibit B to the Class Members;
             receiving and reviewing the Claim Forms submitted by Class Members to determine
19          eligibility for payment of any Gross/Net Settlement Amounts and to determine the
             amount of such payments in accordance with the terms and provisions of this
20          Agreement; calculating and paying any and all payroll tax deductions to be withheld
             from Gross Settlement Amounts as required under this Agreement and applicable
21          law; keeping track of and maintaining an accurate record of requests for exclusion
             from the Class; providing weekly status reports to Defendant's Counsel and Class
22          Counsel; providing a due diligence declaration for submission to the Court prior to
             the Settlement Hearing; mailing Settlement Award checks to Authorized Claimants;
23          printing and providing Authorized Claimants and the Named Plaintiff with W-2 and
             1099 forms as required under this Agreement and applicable law; providing a due
24          diligence declaration for submission to the Court upon the completion of the
             Settlement; and for such other tasks as the Parties mutually agree or the Court orders
25          the Claims Administrator to perform.

26

27

28

Settlement Agreement § III(D). Based upon the recommendation of parties, Gilardi & Co is appointed as the Settlement Administrator.

### IV. CONCLUSION AND ORDER

Based upon the foregoing, the Court finds the proposed class settlement is fair, adequate, and reasonable. The factors set forth by the Ninth Circuit weigh in favor of preliminary approval of the settlement agreement. Moreover, preliminary approval of a settlement and notice to the proposed class is appropriate "if [1] the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls within the range of possible approval." *In re Tableware Antitrust Litig.,* 484 F.Supp.2d 1078, 1079 (N.D.Cal.2007) (quoting *Manual for Complex Litigation,* Second § 30.44 (1985)). Here, the proposed settlement agreement satisfies this test.

Accordingly, based on the above Opinion, the court ORDERS that:

1. Plaintiff's motion for provisional certification of the settlement class is GRANTED;

    a. The Settlement Class is defined as the following:

    Any individual who is included in either or both of the following categories, between the date of October 11, 2007 through March 31, 2013:

    (i) Group A Class Members: All persons who were employed by Defendant as non-exempt employees in California at any time between October 11, 2007 and March 31, 2013, regardless of whether they have been separated or are still employed as of March 31, 2013; and,

    (ii) Group B Class Members: All persons who were employed by Defendant as non-exempt employees in California between October 11, 2007 and March 31, 2013, regardless of whether they have been separated or are still employed as of March 31, 2013, and who were underpaid double-time earning during this period.

2. The settlement agreement is PRELIMINARILY APPROVED, subject to a final determination after the settlement hearing;

3. The proposed Notice Packet is APPROVED;

4.  The Law Offices of Blumenthal, Nordrehaug & Bhowmik is APPOINTED as Class Counsel for purposes of this settlement;

5.  James Gripenstraw is APPROVED as Class Representative for purposes of this settlement;

6.  Gilardi & Co. is APPOINTED as Claims Administrator. Their fees and costs shall not exceed thirty thousand dollars and no cents ($30,000.00);

7.  The parties are to retain Gilardi & Co. as Claims Administrator;

8.  By no later than February 17, 2013, the parties, through the independent Claims Administrator, Gilardi & Co., LLC, shall provide a Notice of Pendency of Class Action, Proposed Settlement and Proposed Hearing Date for Court Approval ("Notice"), a Claim Form and an Exclusion Request Form to all Class Members by first class mail to their last known address according to the information that will be provided to the Claims Administrator by Defendant pursuant the Settlement Agreement and in accordance with the procedures set forth in the Settlement Agreement. The Notice, Claim Form and Exclusion Request Form shall be substantially in the forms attached to the Settlement Agreement as Exhibits A, B and C. The Claims Administrator shall make such further efforts as are possible and reasonable (if any), to provide an applicable Notice to each member of the Settling Classes whose original Notice is returned as undeliverable. All Class Members who have not responded to the Notice shall be mailed a reminder notice on thirty (30) days after the date of mailing of the Notice.

9.  Further deadlines and hearings are as follows:

    Upon completion of mailing of the Notice Packets to class members the parties will inform the Court that notice has been given. The Court will then set a date for a hearing to be held in Courtroom 2 of the United States District Court, Eastern District, before Honorable Anthony W. Ishii to evaluate whether the Court should grant final approval of the settlement, which includes the following considerations:

    a)  Objections to the proposed settlement by Class Members will be considered by the Court if mailed to the Claims Administrator with a

26

1   postmark of no later than sixty (60) days from the date the Notices are first

2   mailed.

3   b)   Class Counsel and counsel for Defendant will be prepared at the hearing to

4   respond to any objections timely filed by the Class Members and to

5   provide other information, as appropriate, bearing on whether or not the

6   settlement should be approved.

7   c)   Pursuant to the Settlement Agreement, Class Counsel's application for

8   fees and costs, as well as the application for Class Representative Service

9   Award, shall be scheduled for determination at the Final Approval

10  Hearing.

11

IT IS SO ORDERED.

12

13  Dated:   December 19, 2013

SENIOR  DISTRICT  JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28